OPINION OF THE COURT
Howard E. Goldfluss, J.
On June 21, 1977, the defendant Ralph Pardo testified under subpoena before the Extraordinary and Special Grand Jury of the County of Bronx. Almost three months prior thereto, he had been indicted together with another by the regular Bronx County Grand Jury charging him in each indictment with one count of promoting gambling in the first *986 degree and a second count of possession of gambling records in the first degree.
Both indictments were filed on March 28, 1977. Indictment No. 700/77 concerned an arrest on December 13, 1976. Indictment No. 701/77 dealt with a January 10, 1977 arrest.
The defendant Pardo did not execute a waiver of immunity before his testimony on June 21, 1977, nor is it alleged that he made such waiver. As a matter of fact, the Assistant Attorney-General representing the office of Special State Prosecutor advised Pardo that by giving testimony before that Grand Jury, he would automatically receive transactional immunity. The full meaning and import of transactional immunity was explained to him. The defendant then stated that he understood its meaning.
The following questions were then asked of Pardo and he made the following answers:
"Q. Mr. Pardo, how are you employed, sir?
"A. Well right now, I gamble.
"Q. What do you mean by you gamble? You bet?
"A. Collect numbers.
"Q. You collect numbers.
"A. Right.
"Q. Are you self-employed or do you work for someone?
"A. Well, I would say self-employed.
"Q. And where do you work out of?
"A. Well, out of 156 Street, 835 E. 156 Street.”
The defendant Pardo now moves for dismissal of the indictments on the ground that under the provisions of CPL 50.10 and 190.40, he is cloaked with immunity and can no longer be prosecuted on the indictments herein. He cites People v McFarlan (42 NY2d 896) as authority. McFarlan has a similar fact pattern. The defendant had been subpoenaed before a Grand Jury investigating two homicides which occurred between December 4 and 6 of 1974. She had been previously indicted by a New York County Grand Jury on October 28, 1974 for sale of a controlled substance, totally unrelated to the homicide inquiry. The Assitant District Attorney advised her that questioning would be limited to her knowledge of events on December 4, 5, and 6, and also about her knowledge and relationship with one Freddy Peebles on those days. She was *987 then asked the following questions and gave the following answers:
"Q. What is your occupation?
"A. I do not work at all.
"Q. How long has it been since you’ve worked?
"A. I never had a job before.
"Q. How were you supported?
"A. I — well, I sold drugs in the past.
"Q. How were you supported during November and December of1974? (Emphasis added.)
"A. Well, when I got busted on June 4th.
"Q. Now, I am not talking about June 4th, I asked you how have you been supported during, etc. etc.?”
The defendant, based on this testimony, moved to dismiss the indictment relating to the sale of the controlled substance on the same immunity theory as Pardo does. The trial court granted the motion. The Appellate Division unanimously reversed (52 AD2d 112) on two theories.
The first was based on CPL 190.40 (subd [2]), which provides that immunity does not apply if the evidence given "is not responsive to any inquiry and is gratuitously given or volunteered by the witness with knowledge that it is not responsive.” They found that her answers were carefully phrased if not deliberately manipulative. Secondly, they found that her statement, that she was "busted”, could not have been deemed self-incriminatory, because an arrest or an indictment is a matter of public record. (See People ex rel. Lewisohn v Court of General Sessions, 96 App Div 201.)
But the gravamen of their decision was that CPL 50.10 applies only when a defendant’s admission of illegal activity specifically relates to the crime charged. The Court of Appeals reversed and reinstated the dismissal of the indictment on the opinion of the Trial Judge. In doing so, they chose to adopt his conclusion that her answer did indeed concern and pertain to or tended to show, prove or incriminate her for the sale and possession of drugs on June 4, 1974. The Trial Judge found that her statements substantially concerned the transaction for which she was indicted and practically constituted a confession to the commission of the crimes for which she was indicted, and that, accordingly, she was entitled to transactional immunity from prosecution for these crimes.
*988 Although, as stated, the facts in McFarlan are similar to the fact pattern herein, there is a marked distinguishable feature. The defendant Pardo was not questioned about, nor did he respond concerning any act or acts which related even remotely to the transactions for which he was indicted. He was asked his present occupation (present meaning at the time he was questioned). No specific date, as in McFarlan, was alluded to, and no confession or reference as in McFarlan, was made to a specific past illegal activity which was the specific basis of the indictment. The issue here is solely whether Pardo gave testimonial evidence concerning a "transaction, matter, or thing” which could cause him to be indicted. (CPL 50.10.)
Applying the most liberal view of CPL 50.10, the responses of Pardo could not be so interpreted. To do so would afford him immunity for any illegal activity regardless of when committed. It is true that the court in McFarlan did not require a great degree of specificity, but a connection or reference to the act which was the basis of the indictmerft was testified to. Indeed, there is authority for the proposition that the connection between the two must be a substantial one. (See Heike v United States, 227 US 131; Grosso v United States, 390 US 62; People v La Bello, 24 NY2d 598.) There is no connection here, substantial or otherwise. This court does not interpret McFarlan to mean that a general statement about one’s present occupation without reference to or description of prior acts or dates of such acts gives him carte blanche immunity protection for any and all past illegal activities. Such an interpretation would frustrate the intent of the statute and defy common sense. The purpose of the statute is to re-enforce Fifth Amendment protection to one who is compelled to testify about an illegal act. He then cannot be prosecuted for the commission of such act. But his statement must relate in some way to the crimes charged, and no such situation exists here.
Motion to dismiss is denied.