◼ In the Matter of DANIEL BROCKWAY, Petitioner, v DONALD H. MONROE, as County Judge of the County of Chemung, et al., Respondents. — Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to CPLR 506, subd [b], par 1) to prohibit respondents from trying petitioner in the County Court of Chemung County on Indictment No. 81-24 charging him with criminal sale of a controlled substance in the third degree and conspiracy in the second degree. On January 9, 1981, petitioner was indicted by a Chemung County Grand Jury for the crimes of criminal sale of a controlled substance in the third degree and conspiracy in the second degree. These charges arose out of an alleged sale of cocaine to one Camille Comfort on November 1, 1980. Subsequently, petitioner was subpoenaed by the Steuben County District Attorney's office to testify on behalf of the prosecution in the Steuben County

homicide trials of Joseph and Larry Comfort. Petitioner appeared at the Steuben County trial on January 20, 1982, and before petitioner was called to the witness stand, his attorney indicated to the prosecutor that petitioner, upon being called to testify, would invoke his Fifth Amendment privilege and refuse to answer questions on the ground that any answers might tend to incriminate him. The Steuben County Judge took note of petitioner's position, and the District Attorney thereupon moved for a grant of immunity in favor of petitioner pursuant to CPL 50.20. The court ruled that petitioner would be granted full transactional immunity. As to possible cross-examination of petitioner regarding matters collateral to the homicide trial, the Trial Judge provided that "[i]f the Court directs them to answer and allows the proper question even though it might be collateral and they testify to it then in that instance again they are clothed [with immunity]". Petitioner was then called to the witness stand and, after asserting his Fifth Amendment privilege and being formally granted immunity, testified on behalf of the prosecution. Upon subsequent cross-examination by defense counsel therein, however, petitioner made a statement regarding a sale of cocaine to Camille Comfort. In a subsequent colloquy with the Trial Judge, the prosecuting attorney argued that petitioner's statement regarding the sale of cocaine to Camille Comfort was not responsive to questioning. The Trial Judge apparently agreed in that he ruled that petitioner's statement was nonresponsive and directed the jury to disregard that portion of his testimony. On March 19, 1982, petitioner made a motion in Chemung County Court, pursuant to CPL 210.20 (subd 1, par [d]), to dismiss the indictment handed down against him. Respondent Trial Judge denied the motion, holding that petitioner's statement in the Steuben County trial was not responsive and he therefore was not to be clothed with immunity. This CPLR article 78 proceeding in the nature of prohibition to prohibit respondents from trying petitioner on the Chemung County indictment was then commenced. The threshold question presented is whether an article 78 proceeding in the nature of prohibition lies to raise the instant issue. In this regard, it is well established that the remedy of prohibition is available only where there is a clear legal right and lies only when a court "acts or threatens to act without jurisdiction in a matter of [*sic*] over which it has no power over the subject matter or where it exceeds its authorized powers in a proceeding over which it has jurisdiction [citations omitted]" (*Matter of State of New York v King,* 36 NY2d 59, 62). If petitioner is correct in his contention that he is immune from prosecution, the District Attorney and County Court would be acting in excess of their powers (see CPL 50.10 *et seq.*). Despite this fact, prohibition is an extraordinary remedy which is not ordinarily available in criminal cases as a method of appeal from intermediate orders. Accordingly, except in extraordinary situations, prohibition will not lie if the alleged errors can be corrected by way of appeal from a subsequent conviction (see, e.g., *Matter of Dondi v Jones,* 40 NY2d 8; *Matter of State of New York v King,* 36 NY2d 59, *supra*). If, however, an appeal would be inadequate to prevent the harm, and prohibition would provide a more effective remedy, it may lie even though the error could be addressed on appeal (*Matter of Lee v County Ct. of Erie County,* 27 NY2d 432, cert den 404 US 823; McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 7801:5, pp 32-34; see, also, *La Rocca v Lane,* 37 NY2d 575, 579-580, cert den 424 US 968). In the present case, if prohibition is found not to lie, defendant will be forced to submit to further prosecution, and if convicted, to raise his claim of immunity on appeal from the judgment of conviction (see *People ex rel. McLaughlin v Monroe,* 44 AD2d 575). Upon the instant record we find that it is proper for this court to entertain petitioner's application. Although not all constitutional

issues are reviewable by way of prohibition (see, e.g., *Matter of Blake v Hogan,* 25 NY2d 747, 748), the Court of Appeals has found prohibition to lie where, as here, the proceeding is based upon petitioner's assertion of his fundamental right against self incrimination (*Matter of Lee v County Ct. of Erie County,* 27 NY2d 432, cert den 404 US 823, *supra;* cf. *Matter of Felder v New York State Supreme Ct.,* 44 AD2d 1). Accordingly, while adhering to the well-settled rule that "the remedy of prohibition is an extraordinary one which is only available in rare cases" (*Matter of Lee v County Ct. of Erie County, supra,* p 438), we hold that the present case presents an issue cognizable by way of prohibition. Having concluded that prohibition lies, we must now turn to the substantive issue. The parties concede, and indeed, it is well recognized, that in New York when a witness is compelled to yield his privilege against self incrimination, he must be granted transactional immunity (*People v McFarlan,* 89 Misc 2d 905, revd 52 AD2d 112, revd 42 NY2d 896 on opn at Trial Term; Bellacosa, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 50.20, pp 316-317). The disagreement between the parties centers upon whether petitioner's statements were responsive to the questions he was asked. This testimony was as follows: "Q. And did you subsequently undertake to sell that cocaine? A. Yes, I guess. Q. Did you or didn't you? A. I don't really remember. Yes. Q. You did? A. Yes. Q. To whom? A. I don't know. Q. You don't know? A. I'm sorry. I didn't sell this cocaine. I sold cocaine earlier. Q. To whom? A. Camille Comfort. Q. When was that? A. Around the first of November". We find that petitioner's statements were reasonably responsive to the questions he was asked (see *People v McFarlan, supra*). A review of the record fails to indicate that the responses were made in bad faith or that they could not have been anticipated (*id.*). The Steuben County Trial Judge had ruled, upon the District Attorney's CPL 50.20 application, that if the questioning were allowed and petitioner answered in a responsive manner he would be clothed with immunity. This is precisely what occurred. Petition granted, without costs, and Indictment No. 81-24 dismissed. Mahoney, P. J., Kane, Casey and Weiss, JJ., concur.

Levine, J., dissents and votes to dismiss the petition in the following memorandum. Levine, J. (dissenting). Conceding, *arguendo,* that petitioner's answer to defense counsel's question on cross-examination was responsive, nevertheless, in my view, he did not obtain transactional immunity as to the crime he described in that answer. Clearly, the Steuben County Court, in striking that portion of the testimony, ruled not only that petitioner's answer was unresponsive, but that it related to a matter totally collateral to the issues on trial. The request by the District Attorney only covered immunity "for relevant and material questions, not for any collateral acts which have nothing to do with the trial or indictment." That this was sufficient immunity to compel petitioner's direct testimony was impliedly determined in *Matter of O'Neil v Kasler* (53 AD2d 310), where the court upheld a summary adjudication of criminal contempt for a refusal to answer questions under a similar offer of immunity (see *id.,* at p 313).[1] Moreover, as to the questions and answers under review, there was a failure to follow the multistep procedure outlined in CPL 50.20 and 50.30 for granting transactional immunity, i.e., the witness' express refusal to answer a specific question based upon the privilege against self incrimination, a request by the District Attorney that the court confer immunity, and an order by the court that the witness answer the question after advising him that he will receive immunity upon so doing. This procedure was originally enacted in section 2447 of the former Penal Law (L

---

1. If the petitioner in *Matter of O'Neil* had been offered less than the immunity required by law, he could have refused to answer questions (*People v De Feo,* 308 NY 595, 604).

1953, ch 891, § 1) for the specific purpose of avoiding inadvertent, overly broad and unnecessary "immunity baths" which might have resulted under the automatic immunity provisions of prior law (see description of legislative history in *Matter of O'Neil v Kasler, supra,* pp 317-319; see, also, Denzer, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 50.20, pp 150-151). The transcript clearly refutes any inference that the District Attorney waived the requisite multistep procedure with respect to cross-examination on collateral issues, but instead insisted that "we go on a question by question basis". Moreover, since the questions defense counsel posed could have been answered by testimony relevant and material to the issues in the trial, the prosecutor could not have known in advance that petitioner would respond by testimony on an unrelated matter. When that in fact took place, however, the prosecutor promptly moved to strike the testimony. Thus, *People v McFarlan* (89 Misc 2d 905, revd 52 AD2d 112, revd 42 NY2d 896 on opn at Trial Term), relied upon by the majority, is quite distinguishable: it arose in the context of a Grand Jury proceeding (where the foregoing multistep immunity procedure does not apply), and the answer at issue there was given in response to a question posed by the District Attorney (who could hardly contend that it was collateral once the answer was held responsive in the lay sense of that word) (see *People v McFarlan,* 89 Misc 2d 905, 908, *supra*). In addition to the restrictions upon transactional immunity imposed by the procedure outlined in CPL 50.20 and 50.30, other limitations have been incorporated by statute and case law to prevent overly broad and unnecessary conferrals of immunity. Thus, immunity will not be granted when a witness' answer is volunteered and unresponsive (CPL 190.40, subd 2, par [b]). Nor will it extend to testimony where the relationship between the witness' answer and the crime charged against him is "wholly insubstantial" (*People v La Bello,* 24 NY2d 598, 604-605, app dsmd *sub nom. Piccirillo v New York,* 400 US 548; see *Heike v United States,* 227 US 131, 142; *People v Pardo,* 92 Misc 2d 985), that is, having no real tendency to contribute to a conviction for the crime concerning which a defendant testified (*People v Williams,* 81 AD2d 418, 424-426, affd 56 NY2d 916). There are even more compelling similar reasons to exclude answers to cross-examination on collateral matters from transactional immunity and to limit it to testimony relevant and material to the issues in the trial. It is elementary that any prosecution witness, including one immunized at the request of the District Attorney, is subject to cross-examination with respect to any immoral, vicious, or criminal acts which may affect his character and show him to be unworthy of belief (Richardson, Evidence [10th ed], § 498, p 482). To extend transactional immunity to a witness' answers on such collateral matters thus creates a risk of immunity baths beyond the control of the prosecutor and far greater than those which the statutory scheme of CPL 50.20 and its predecessors was designed to avoid.[2] Indeed, the danger of uncontrollable abuse is so great as to effectively eliminate the use of immunity as a weapon to prosecute crime. For all of the foregoing reasons, the petition should be dismissed.

---

2. Since petitioner's answer was compelled without strict compliance with the immunity procedures of CPL 50.20 and 50.30, however, with respect to that portion of his testimony he should have use and derivative use immunity on the trial of the instant indictment (cf. *People v Avant,* 33 NY2d 265, 272; *People v Laino,* 10 NY2d 161, 173, app dsmd 374 US 104).